Brenda LOVGREN, Petitioner and Appellant,

v.

JOB SERVICE NORTH DAKOTA, Respondent and Appellee,

and

Midwest Telemark Int., Inc., Respondent.

Civ. No. 930346.

Supreme Court of North Dakota.

April 20, 1994.

---

Richard R. LeMay (argued), Legal Assistance of ND, Minot, for petitioner and appellant.

Douglas Alan Bahr (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for respondent and appellee.

NEUMANN, Justice.

Job Service of North Dakota disqualified Brenda Lovgren from unemployment benefits because she was discharged for misconduct under NDCC § 52–06–02(2). Lovgren appeals from the district court judgment upholding Job Service. We affirm.

Lovgren was employed part-time as a telemarketer for Midwest Telemark International, Inc. [MTI]. Her job was to call potential customers, explain features of various products, and then attempt to make sales. She was also required to keep a tally sheet, recording the outcome of each call. MTI had a system whereby it could monitor telemarketers. Acting on a suspicion Lovgren was falsifying her tally sheets, on January 21, 1993, Rod Helming, vice-president of operations, intermittently monitored Lovgren's calls. After monitoring her calls for a straight hour, and physically marking his own tally sheet, Helming compared his tally sheet to Lovgren's. There were several inconsistencies. On January 21, 1993, Lovgren was discharged for falsifying her tally sheet.

Lovgren applied for unemployment compensation benefits on January 26, 1993, and was awarded benefits by the claims deputy on February 11, 1993. It was only later in February that MTI made an untimely request for a hearing, reporting the reasons for Lovgren's discharge as:

"1.  Falsified records that could be extremely detrimental to the company's goodwill and reputation in the industry we work for.

"2.  Distrupted [sic] the other employees during work.

"3.  Leaving during work without asking permission.

"4.  Would not follow company procedures."

At a hearing held regarding MTI's untimely request for a hearing, Job Service determined there was no evidence in the record to establish MTI received the request for separation information. Therefore, MTI was allowed to appeal the claims deputy's decision awarding Lovgren unemployment benefits.

On March 29, 1993, a telephone hearing was held to determine whether Lovgren voluntarily left employment without good cause attributable to the employer, or was discharged for misconduct connected with work. Finding that Lovgren was discharged for misconduct, the appeals referee reversed the claims deputy's decision on April 6, 1993. The appeals referee's decision was affirmed by the Bureau on May 4, 1993. The Bureau's decision was affirmed by the district

court on August 6, 1993. This appeal followed.

■ When reviewing administrative agency decisions, we review the decision of the agency, and not the decision of the district court. *E.g., Lambott v. Job Service N.D.,* 498 N.W.2d 157, 158 (N.D.1993). Under NDCC § 28–32–19, we must affirm the agency's decision unless one of the six enumerated reasons exists.[1] Lovgren argues that the findings of fact made by the agency are not supported by a preponderance of the evidence, and the conclusions of law are not supported by the findings of fact. *See* NDCC § 28–32–19(5), (6).

## I.

The referee's decision included several findings of fact. The referee found that, as a telemarketer, Lovgren was required to keep a tally of her calls, and that it was important the employer receive accurate tallies from its telemarketers. Lovgren was discharged after MTI determined she had falsified her tallies during a monitored session. Additional factors considered by MTI in its decision to discharge Lovgren included prior warnings about interrupting and disrupting the work of co-workers, and, on one occasion, briefly leaving the building during work without permission or informing the supervisor.

■ Lovgren argues that a reasoning mind could not have reasonably determined that the factual conclusions were supported by the weight of the evidence. *E.g., Blueshield v. Job Service N.D.,* 392 N.W.2d 70, 72 (N.D.1986). Specifically, she points to the fact that the only evidence offered by MTI was the testimony of Ron Helming, vice-

president of operations. She describes his testimony as "confusing, contradictory and less than convincing," and concludes that "[t]he referee's finding of misconduct ... solely on the unpersuasive testimony of the employer is obviously a showing of bias for the employer." We disagree.

■ An adverse ruling in and of itself is not tantamount to bias. There is sufficient testimony in the record for the referee to make the findings of fact that he did. When we review agency decisions, we do not make independent findings of fact or substitute our judgment for that of the agency, but decide only whether a reasoning mind reasonably could have decided that the factual conclusions were proved by the weight of the evidence. *E.g., Neubauer v. Job Service N.D.,* 512 N.W.2d 428 (N.D.1994). We exercise restraint; it is not our function to act as a super board. *E.g., id.* When faced with conflicting testimony, it is the referee's job as fact finder to ascertain the weight to be given to the evidence. In reviewing agency decisions, we do not determine whether referees were correct in their determinations and inferences, only whether reasoning minds reasonably could determine whether the factual conclusions reached were proved by the weight of the evidence. *Lorenzen v. State Hwy. Comm'r,* 401 N.W.2d 526 (N.D.1987). Such a standard is met in this case.

## II.

■ Lovgren argues that Job Service's conclusions of law are not sustained by its findings of fact. More specifically, she contends that her conduct did not constitute

---

1. *"28–32–19. Scope of and procedure on appeal from determination of administrative agency.* A judge of the district court must review an appeal from the determination of an administrative agency based only on the record filed with the court. After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court must affirm the order of the agency unless it shall find that any of the following are present:

   1. The order is not in accordance with the law.
   2. The order is in violation of the constitutional rights of the appellant.

   3. Provisions of this chapter have not been complied with in the proceedings before the agency.
   4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
   5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
   6. The conclusions of law and order of the agency are not supported by its findings of fact.
   If the order of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the order of the court."

misconduct disqualifying her from receiving unemployment benefits. We disagree.

 Determining whether behavior constitutes misconduct under NDCC § 52–06–02(2) is a mixed question of fact and law. *E.g., Holiday Inn v. Karch,* 514 N.W.2d 374 (N.D. 1994). Although not defined in our unemployment compensation law, the term "misconduct" is defined in our case law.

" '[M]isconduct' in the unemployment statute '. . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

*Perske v. Job Service N.D.,* 336 N.W.2d 146, 148–49 (N.D.1983) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941)). "Whether an employee's behavior is misconduct depends in part on the nature of the work." *Karch,* 514 N.W.2d at 376.

It is uncontested that keeping an accurate tally of the outcome of phone calls made is important to MTI. The tallies are required so MTI can provide accurate information to the firms which are purchasing its telemarketing services. It is also uncontested that falsification of the tally sheets would be a serious offense. In addition, the agency found that individual employees' salaries may be increased by the success ratio they experience. A high acceptance rate and low refusal rate may be monetarily rewarding for the employee.

There is adequate evidence in the record for a reasoning mind to find that the tally discrepancies were more than isolated incidents. Not only were there several discrepancies, but there is evidence to suggest the monitoring was specifically done in response to reports by other employees that Lovgren might be falsifying her tally sheets. We distinguish this falsification by Lovgren from mere inability or incapacity of an employee. Although the discrepancies might be the result of carelessness or negligence, the fact that there was more than one discrepancy, and they were discrepancies that appear to enhance Lovgren's performance raise the discrepancies to such a degree of "culpability, wrongful intent or evil design, [as to suggest] an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to [her] employer." *Perske,* 336 N.W.2d at 148.

For these reasons we affirm.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.