1999 ND 234

**Linette F. HJELDEN, Petitioner and Appellant,**

**v.**

**JOB SERVICE NORTH DAKOTA, Respondent and Appellee,**

**and**

**The Grain Hopper, Respondent.**

**No. 990150.**

Supreme Court of North Dakota.

Dec. 22, 1999.

Richard R. LeMay, Legal Assistance of ND, Minot, ND, for petitioner and appellant.

Douglas A. Bahr, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Linette Hjelden appealed from the district court's judgment which affirmed a Job Service decision denying her unemployment benefits. Because we hold a preponderance of the evidence supports Job Service's finding Hjelden voluntarily quit employment without good cause attributable to her employer, we affirm.

I.

[¶ 2] Linette Hjelden began working as a waitress in a bar on April 17, 1998. On May 8, 1998, while working a shift with a new bartender, Hjelden and the bartender quarreled. Hjelden alleged the bartender was too slow and thus was causing customers to complain. After the shift, there was a shortage in a till. The manager initially told Hjelden she and the bartender would have to cover the shortage. However, the manager later excused Hjelden from responsibility for the shortage because the bartender and Hjelden each had a till and the till with the shortage was the one used by the bartender.

[¶ 3] A few days later, Hjelden asked not to be scheduled to work with the new bartender. The manager testified she told Hjelden she would do her best not to schedule the two together. Hjelden testified the manager said Hjelden probably would not have to work with the bartender anymore because they would not be put on the schedule together.

[¶ 4] On May 15, 1998, Hjelden noticed she was scheduled to work that evening with the new bartender. The manager testified the bartender was scheduled to work with Hjelden because two other employees missed work shifts. Hjelden became upset and tried to contact a manager. She eventually contacted the bar's assistant manager and requested the assistant manager come to the bar and work in Hjelden's place for the remainder of her shift. Hjelden testified the assistant manager "said that we had to get along—- or we couldn't pick and choose what hours we worked." When the assistant manager ar-

rived, Hjelden said she would not work with the new bartender. The assistant manager said "[a]re you leaving, or am I leaving?" Hjelden indicated she was leaving. The assistant manager said "[i]f you leave you won't be back on the schedule." Hjelden then left.

[¶ 5] Hjelden applied for unemployment benefits. On June 18, 1998, Job Service denied benefits, reasoning Hjelden was discharged for disqualifying misconduct. Hjelden appealed. An appeals referee sent Hjelden a notice of hearing which indicated the issue on appeal was "whether the claimant voluntarily left employment without good cause attributable to the employer or was discharged for misconduct connected with the work." After the hearing, the referee upheld the denial of benefits, finding Hjelden had voluntarily quit without good cause attributable to the employer. Hjelden appealed to Job Service. In November 1998, Job Service affirmed the referee's findings and denial of benefits. Hjelden appealed to the district court, and, on March 5, 1999, the district court entered a judgment affirming the decision of Job Service. Hjelden appealed to this Court.

## II.

[¶ 6] A reviewing court must affirm a Job Service decision if: (1) its findings of fact are supported by a preponderance of the evidence; (2) its conclusions of law are sustained by the findings of fact; and (3) its decision is supported by the conclusions of law. *Stalcup v. Job Service North Dakota*, 1999 ND 67, ¶ 6, 592 N.W.2d 549 (citing N.D.C.C. § 28–32–19). Our duty is to determine merely whether a reasoning mind could have reasonably decided the findings of fact were proved by the weight of the evidence.

## III.

[¶ 7] Hjelden argues the evidence indicates she was fired but not for misconduct disqualifying her from unemployment benefits. She alleges she merely left her scheduled shift and did not quit her job.

[¶ 8] Under N.D.C.C. § 52–06–02(1) and (2), an individual is disqualified from receiving unemployment benefits if the person either voluntarily quits without good cause attributable to the employer or is discharged for misconduct. In *Holiday Inn v. Karch*, 514 N.W.2d 374, 376 (N.D. 1994), we explained the proper application of N.D.C.C. § 52–06–02. First, Job Service must decide whether the employee quit or was fired, a factual decision. If Job Service finds the employee voluntarily quit, the employee is ineligible for benefits unless the employee shows good cause attributable to the employer, a factual issue. *See Lipp v. Job Service North Dakota*, 468 N.W.2d 133, 134 (N.D.1991) (indicating the issue of whether good cause exists is a question of fact). If Job Service finds the employee was fired, the employee is eligible for benefits unless the employer proves misconduct. *Holiday Inn v. Karch*, 514 N.W.2d, at 376. Misconduct exists only where the employee displays a wilful or wanton disregard of the employer's interests. *Neubauer v. Job Service North Dakota*, 512 N.W.2d 428, 431 (N.D.1994).

[¶ 9] In *Holiday Inn v. Karch*, 514 N.W.2d 374 (N.D.1994), we encountered a fact pattern similar to the one here. An employee requested, about six to eight weeks in advance, to have Christmas day off. The employer did not immediately grant or deny the request. Two days before Christmas, the employee reminded the employer she would not be working on Christmas, but the employer indicated her request had been denied. The employee did not show up for work on Christmas. When the employee returned for her next scheduled shift, her timecard was gone and she was told to leave. The employee then applied for unemployment benefits. Job Service ultimately found the employee was fired but her act did not amount to misconduct. Relying on the employee's belief the employer intended to find a replacement to accommodate her advance request for the

day off, Job Service found "[i]n view of the initial response given to the claimant by her supervisor ..., it was reasonable to assume that the claimant would not be working on Christmas Day." *Holiday Inn v. Karch,* 514 N.W.2d at 375. Job Service held the employee was eligible for benefits. On appeal, the employer argued the employee was ineligible for unemployment benefits either because she quit or because she was fired for misconduct. We noted "[i]f confronted with disputed facts, we defer to the agency's factual conclusions and consider only whether a reasoning mind could have reasonably determined that the factual conclusions were proved by a preponderance of the evidence." *Id.* at 376. Emphasizing the employee was asked on December 23 if she was quitting and she said no and the employee attempted to return to work after Christmas, we held Job Service could have reasonably found the employee was fired. *Id.*

[¶ 10] Although *Karch* involved similar facts, in the instant case, one could rationally find Hjelden voluntarily quit. The assistant manager asked Hjelden, "[a]re you leaving, or am I leaving," and Hjelden indicated she was leaving. Before leaving her shift, Hjelden was told she would not be put on the schedule if she left. Hjelden clearly had the option to continue her shift but chose to stop working. Whether an employee quit or was fired depends on the circumstances and is a factual decision. An employee voluntarily quits if the person freely chooses to stop working for the employer. *Id.* at 376. We must "defer to the agency's factual conclusions and consider only whether a reasoning mind could have reasonably determined that the factual conclusions were proved by a preponderance of the evidence." *Id.* We hold Job Service did not err in finding Hjelden quit.

[¶ 11] Hjelden asserts even if she voluntarily quit, she had good cause attributable to her employer. In *Carlson v. Job Service North Dakota,* 548 N.W.2d 389, 393 (N.D.1996), we described what consti-

tutes quitting with good cause attributable to the employer under N.D.C.C. § 52–06–02(1). We explained "an employee does not have good cause to quit her job merely because she has irreconcilable differences with coworkers or is frustrated or dissatisfied with her working conditions." *Id.* We also emphasized the employee bears the burden of proving the resignation was the result of good cause attributable to the employer. *Id.* at 395.

[¶ 12] Hjelden did not prove good cause attributable to the employer. Hjelden contends good cause exists because the bartender was slow and inexperienced. She asserts she would be subject to more customer complaints and would earn less money since tips were a significant portion of her income. However, a mere desire not to work with another employee because the employee is inexperienced and slow is analogous to an irreconcilable difference with a co-worker or a frustration or dissatisfaction with working conditions. *Carlson v. Job Service North Dakota,* 548 N.W.2d at 395. Although Hjelden emphasizes the manager indicated she and the bartender probably would not have to work together in the future, the employer never promised Hjelden she would not have to work with the bartender. On May 15, the employer was forced to schedule Hjelden and the bartender together when two other employees missed shifts. Hjelden points out the incident involving the till shortage and asserts she does not want to be held accountable again for the bartender's mistakes. However, shortly after the incident the manager excused Hjelden from liability for the shortage. The manager also indicated each employee would be responsible for her own till. Upon these facts, we conclude Hjelden has failed to meet her burden.

## IV.

[¶ 13] We conclude a reasoning mind could have found Hjelden voluntarily quit employment without good cause attribut-

able to her employer. We therefore affirm the district court's decision.

[¶ 14] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.